IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMEY MCKEE, | No. 4:23-CV-00015 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| M. ROWE, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

JANUARY 24, 2024

Plaintiff Jamey McKee is a serial *pro se* litigant who was previously confined at the State Correctional Institution Rockview (SCI Rockview), in Bellefonte, Pennsylvania. He filed the instant *pro se* Section 1983[1] action claiming that several SCI Rockview officials violated his constitutional rights. Presently pending is Defendants' motion for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will deny Defendants' motion.

I.      BACKGROUND

McKee is currently incarcerated at SCI Somerset.[2] He lodged the instant lawsuit in December 2022 while housed in the Behavior Management Unit (BMU)

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] *See* Doc. 29.

at SCI Rockview.³ McKee initially alleged that four SCI Rockview officials—T. Furguson, M. Rowe, J. Butler, and W. McCusker—violated his First and Eighth Amendment rights, primarily by retaliating against him for filing a report under the Prison Rape Elimination Act (PREA).⁴

Defendants moved for partial dismissal of McKee's complaint.⁵ In response, McKee filed an amended complaint⁶ as a matter of course,⁷ which is the current operative pleading. He dropped Furguson and Butler from the lawsuit, naming only McCusker and Rowe as defendants.⁸

In his amended complaint, McKee asserts that McCusker and Rowe retaliated against him for filing a PREA report and that McCusker also failed to protect him from an assault by another inmate. McKee first alleges that on December 12, 2022, "inmate Shears" threatened to assault him for "being a rat" and filing lawsuits and that this threat was witnessed by McCusker.⁹ McKee claims that McCusker then called him a "f*ggot" and told him that he was going to purposefully place inmate "Manson," who had allegedly masturbated near (or toward) McKee in the past, in a cell close to McKee again.¹⁰ McKee avers that he

---

3  *See generally* Doc. 1.
4  *See generally id.*
5  Doc. 14.
6  Doc. 25.
7  *See* FED. R. CIV. P. 15(a)(1)(B); *see also* Doc. 24.
8  *See* Doc. 25 ¶¶ 7-8.
9  *Id.* ¶ 17.
10 *Id.* ¶ 19.

told McCusker that he was going to file a PREA report against him for his comments and threats involving inmate Manson, and that McCusker responded that he "d[id] not care."[11]

The next day, McKee recounts that he asked McCusker to contact the PREA lieutenant so that he could file a report about McCusker's sexual harassment and threats from the previous day.[12] McKee alleges that McCusker denied him "out of cell time" for the day for "want[ing] to be a rat" by filing a PREA report.[13] McKee further contends that McCusker then knowingly permitted inmate Shears to slide an envelope filled with "fecal matter" into McKee's cell, which McKee claims got on his hand when he picked up the envelope without knowing its contents.[14] Later that day, McKee met with a PREA lieutenant and reported McCusker's sexual comments and threats.[15]

McKee next alleges that, on December 14, 2022, Rowe retaliated against him for making the December 13 PREA report by demoting McKee's BMU phase from 2 to 3 without "any logical justification."[16] McKee claims that he informed Rowe of McCusker's sexual harassment and threats and about the envelope incident with inmate Shears, but that Rowe cut him off and stated that he had

---

[11] *Id.* ¶ 20.
[12] *Id.* ¶ 23.
[13] *Id.*
[14] *Id.* ¶¶ 26-28.
[15] *Id.* ¶ 34.
[16] *Id.* ¶ 36.

warned McKee "about making untrue PREA allegations" and told McKee that he was going to demote his BMU phase.[17] McKee avers that his phase was demoted that same day, allegedly without any legitimate basis.[18] He maintains that this phase demotion caused him to remain for a longer time in the BMU, which is part of the Restrictive Housing Unit (RHU), and adversely affected his mental health.[19]

McKee asserts that McCusker and Rowe violated his First Amendment rights by retaliating against him for attempting to make (and making) a PREA report.[20] He additionally alleges that the purported retaliatory assault by inmate Shears on December 13 constituted failure to protect by McCusker in violation of the Eighth Amendment.[21] McKee sues both Defendants in their individual and official capacities. He seeks retroactive declaratory relief acknowledging that his rights were violated and injunctive relief in the form of being "release[d] to General Population."[22] He also requests compensatory and punitive damages.[23]

Defendants move for partial dismissal of McKee's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[24] That motion is fully briefed and ripe for disposition.

---

[17]  *Id.* ¶¶ 39-44.
[18]  *Id.* ¶¶ 44-45.
[19]  *Id.* ¶¶ 49-50.
[20]  *Id.* ¶¶ 54-55.
[21]  *Id.* ¶ 53.
[22]  *Id.* ¶¶ 57, 59.
[23]  *Id.* ¶¶ 60-61.
[24]  *See generally* Doc. 26.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[25] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[26] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[27]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[28] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[29] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[30] Finally, the court must review the presumed-truthful allegations

---

[25] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[26] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[27] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[28] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[29] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[30] *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"and then determine whether they plausibly give rise to an entitlement to relief."³¹ Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."³²

Because McKee proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"³³ This is particularly true when the *pro se* litigant, like McKee, is incarcerated.³⁴

### III. DISCUSSION

Defendants challenge the sufficiency of McKee's retaliation claim against Rowe as well as his request for injunctive relief. The Court will review Defendants' argument in turn.

#### A. First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."³⁵ To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected

---

31  *Id.* (quoting *Iqbal*, 556 U.S. at 679).
32  *Iqbal*, 556 U.S. at 681.
33  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
34  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
35  *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

6

conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[36]

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[37] When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.[38] However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[39] Another approach is to demonstrate "a pattern of antagonism coupled with timing."[40] Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[41] Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[42]

---

[36] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).
[37] *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).
[38] *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).
[39] *Id.*
[40] *DeFlaminis*, 480 F.3d at 267.
[41] *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).
[42] *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

Defendants contend that McKee has not plausibly alleged an adverse action or causation with respect to his retaliation claim against Rowe.[43] The Court disagrees.

McKee alleges that, in retaliation for filing a PREA report against McCusker, Rowe demoted McKee's BMU phase from 2 to 3. McKee describes the BMU as a minimum four-month program where an inmate advances through phases (from 5 to 1) based on the inmate's behavior and compliance with his or her Individual Recovery Plan (IRP).[44] The BMU is a subsection of the RHU with conditions more restrictive than general population.[45] He alleges that this demotion resulted in a longer stay in the BMU and adversely affected his mental health.

Defendants argue that such a demotion does not rise to the level of an adverse action. According to Defendants, the differences between Phase 2 and Phase 3 in the BMU are negligible and would not deter a person of ordinary

---

[43] Defendants do not challenge that filing a PREA report is protected First Amendment conduct, but note that there is no First Amendment right to file frivolous or false reports or grievances. The Court agrees with Defendants that, if it were proven that McKee's December 13, 2022 PREA report was frivolous or false, it would nullify McKee's retaliation claim. *See United States v. Gonzalez*, 905 F.3d 165, 191-92 (3d Cir. 2018) (explaining that there is no First Amendment protection for defamation or "false statements of fact" (citation omitted)); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-11 (1991) (noting that there is no First Amendment protection for "a statement [made] with knowledge of falsity or reckless disregard as to truth or falsity"); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 124-25 (3d Cir. 2017) (nonprecedential) (finding that retaliation claim must be dismissed because alleged protected conduct was a "patently frivolous" lawsuit and "[t]here is simply no constitutional right to prosecute frivolous litigation").

[44] Doc. 25 ¶ 12.

[45] *Id.* ¶ 11.

8

firmness from exercising his First Amendment rights. That may be true. However, at this early stage of the litigation, the Court cannot conclusively say that a phase demotion in BMU programming can never amount to an actionable adverse action. This is a fact-driven inquiry[46] that requires information beyond the pleadings and thus is ill-suited for a motion to dismiss.

Defendants next argue that McKee has not plausibly alleged causation for his retaliation claim against Rowe. They assert that McKee's allegations of filing a PREA report against McCusker lack any causal connection to Rowe's purported BMU phase demotion. Once again, the Court cannot agree.

McKee alleges that he reported McCusker's sexual harassment and threats to Rowe and informed him that he had filed a PREA report against McCusker the previous day. He claims that, on the same day he informed Rowe about these incidents, Rowe expressed doubt as to his allegations and promptly demoted his BMU phase later that day in retaliation for filing what Rowe believed to be a frivolous PREA report. At the pleading stage, McKee has plausibly alleged causation through unusually suggestive timing and other circumstantial evidence tending to show that the alleged adverse action was taken because he exercised his First Amendment rights by filing a PREA report.

---

[46] *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (noting that "whether a prisoner-plaintiff has met [the adverse action] prong of his or her retaliation claim will depend on the facts of the particular case").

### B. Official Capacity Claims

McKee sues McCusker and Rowe in their individual and official capacities.[47] However, any official capacity claim seeking monetary damages from state officials is barred by Eleventh Amendment sovereign immunity.

The Eleventh Amendment to the United States Constitution prevents federal courts from entertaining lawsuits—by United States citizens or citizens of foreign states—brought against a state.[48] This immunity from private suit extends to state agencies as well as state officials acting in their official capacity, because such lawsuits are essentially civil actions "against the State itself."[49] States may waive this immunity if they choose, but Pennsylvania has explicitly not waived its immunity with respect to claims brought under Section 1983.[50] There are two exceptions to the Eleventh Amendment's bar to private suits against nonconsenting states: (1) "Congress may abrogate a state's immunity" and (2) "parties may sue state officers for *prospective* injunctive and declaratory relief."[51]

McKee seeks compensatory and punitive damages. To the extent those damages are sought against Defendants in their official capacities, such claims are

---

[47] *See* Doc. 1 at p.1 (caption).
[48] U.S. CONST. amend. XI; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).
[49] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).
[50] *See* 42 PA. CONS. STAT. § 8521(b); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 & n.5 (3d Cir. 2010) (citing 42 PA. CONS. STAT. § 8521(b)).
[51] *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.*, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, *Ex parte Young*, 209 U.S. 123 (1908)).

barred by Eleventh Amendment sovereign immunity. McKee's request for a declaration that his constitutional rights were violated is retrospective, rather than prospective, in nature. Finally, McKee seeks prospective injunctive relief in the form of "release to General Population."[52] Contrary to Defendants' contention, this request for injunctive relief cannot be dismissed as moot simply because McKee was transferred, as it is possible that McKee is still housed in the BMU at SCI Somerset. In sum, except for McKee's request for prospective injunctive relief, all official capacity claims must be dismissed for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

### C.  Exhaustion of Administrative Remedies

The Court makes one final observation. The events in McKee's amended complaint (which were also part of his original complaint) are alleged to have occurred between December 12 and December 14, 2022. McKee apparently filed the instant lawsuit just one or two weeks after the at-issue incidents allegedly took place.[53] Consequently, from the face of the original complaint, it appears that McKee failed to exhaust administrative remedies under the well-established requirements of the Pennsylvania Department of Corrections' three-step grievance

---

[52]  Doc. 25 ¶ 59.
[53]  It is uncertain when McKee gave his original complaint to prison officials for mailing. His complaint is (likely mistakenly) dated August 15, 2022. *See* Doc. 1 at 25. However, his accompanying "declaration" is dated December 20, 2022, (*see* Doc. 1-1 at 10); the outgoing postal mark from SCI Rockview is dated December 29, 2022, (*see* Doc. 1 at 26); and the mailing was received by the Court on January 5, 2023, (*see id.*). Thus, McKee must have given his lawsuit to prison officials for mailing around the third or fourth week of December 2022.

process.[54] However, exhaustion is an affirmative defense,[55] and it cannot be conclusively determined that McKee failed to exhaust the instant claims from the face of the amended complaint. Accordingly, the Court declines to *sua sponte* dismiss the Section 1983 claims against McCusker and Rowe at this time for failure to exhaust administrative remedies.

## IV. CONCLUSION

Based on the foregoing, the Court will deny Defendants' motion (Doc. 26) for partial dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[54] *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

[55] *See Jones v. Bock*, 549 U.S. 199, 216 (2007).